**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**MIKO BLUE MAHI** **CIVIL ACTION**

**VERSUS** **NO. 25-981-JWD-EWD**

**LOUISIANA DEPARTMENT OF WILDLIFE AND FISHERIES, ET AL.**

**RULING AND ORDER**

Before the Court are the following motions: the Motion to Set Aside the March 6, 2026 Entry of Default Pursuant to FRCP 55(C) and for Extension of Time to File Responsive Pleadings ("Motion to Set Aside Default"),[1] filed by Defendants Alvin Landry ("Landry") and Joshua LeBoeuf ("LeBoeuf"); the Motion for Default Judgment,[2] filed by Miko Blue Mahi (f/k/a William-David Owens, Jr.)[3] ("Plaintiff"), who is representing himself, which seeks a default judgment against these defendants; and the Motion for Preliminary Injunction,[4] filed by Plaintiff.

As set forth further below, for good cause shown, Landry and LeBoeuf's Motion to Set Aside Default will be granted. Therefore, Plaintiff's Motion for Default Judgment will be denied. The Motion for Preliminary Injunction will also be denied as Plaintiff has failed to show a substantial likelihood of success on the merits of his claims.

## I. BACKGROUND

Plaintiff filed his original Complaint for Declaratory, Injunctive, and Monetary Relief, on or about October 24, 2025, alleging claims under the Supremacy Clause of the U.S. Constitution,

---

[1] R. Doc. 59. Documents in the Court record are referred to as "R. Doc. __."

[2] R. Doc. 70.

[3] The suit was originated under the name "William-David Owens, Jr." Plaintiff changed his name during the course of this suit. R. Docs. 83, 87.

[4] R. Doc. 2.

treaties between the United States and Plaintiff's tribe (the Louisiana Band of Choctaws), and other federal civil rights laws, including 42 U.S.C. § 1983.[5] More specifically, Plaintiff claims that "Defendants' enforcement of a fishing license statute against Plaintiff violates federal treaty obligations and the Supremacy Clause."[6] Plaintiff names as defendants the Louisiana Department of Wildlife and Fisheries ("LDWF"), Attorney Alvin Landry, Attorney Cole Garrett, Administrative Law Judge William Cooper, and Corporal Joshua LeBoeuf.[7] With the Complaint, Plaintiff filed the Motion for Preliminary Injunction,[8] seeking to enjoin the defendants from enforcing a fine issued by the LDWF under Louisiana law.[9] Consideration of the injunction was originally deferred pending service on the defendants.[10]

On or about January 8, 2026, Plaintiff filed a First Amended Complaint that largely reiterated his prior claims that the citation he was issued for fishing without a license violates established treaty rights. Plaintiff also cites to *People v. LeBlanc*, 399 Mich. 31 (1976) as "controlling authority" in the First Amended Complaint and updates his demand for damages.[11]

All defendants have now appeared and have filed motions to dismiss Plaintiff's claims for failure to state a claim. The motions to dismiss raise defenses of, *inter alia*, Eleventh Amendment immunity, absolute judicial and prosecutorial immunity, and qualified immunity.[12]

---

[5] R. Doc. 1.

[6] R. Doc. 1, p. 3, ¶ 13.

[7] R. Doc. 1, pp. 2-3.

[8] R. Doc. 2.

[9] R. Doc. 2-1, pp. 1-2; *see also* R. Doc. 1, p. 2 ("Defendant, Louisiana Department of Wildlife and Fisheries (LDWF), is a state agency that enforces state fishing laws and issued the unlawful citation at issue.").

[10] R. Doc. 9.

[11] R. Doc. 43.

[12] R. Docs. 79, 80.

## II. LAW AND ANALYSIS

### A. The Motion to Set Aside Entry of Default Will Be Granted and Plaintiff's Motion for Default Judgment Will Be Denied

To clean up preliminary matters regarding the defendants' appearances, the Court will first address the Motion to Set Aside Default,[13] filed Landry and LeBoeuf, and the Motion for Default Judgment,[14] filed by Plaintiff.

A Clerk's Entry of Default was entered against Landry and LeBoeuf on March 6, 2026.[15] On March 9, 2026, counsel enrolled for Landry and LeBoeuf, as well as Defendants Cole Garrett and LDWF and filed the Motion to Set Aside Default, which also requests an extension of time to file responsive pleadings.[16] Plaintiff opposes the Motion to Set Aside Default and also filed the Motion for Default Judgment, seeking judgment against Landry and LeBoeuf.[17]

This Court has previously set out the following standards regarding requests to set aside entry of default:

> Rule 55(c) of the Federal Rules of Civil Procedure provides that courts may set aside an entry of default for "good cause." Good cause "is not susceptible of precise definition, and no fixed, rigid standard can anticipate all of the situations that may occasion the failure of a party to answer a complaint timely." Therefore, "the requirement of 'good cause' ... ha[s] generally been interpreted liberally." Courts typically consider the following factors to determine whether a defendant has shown good cause to set aside entry of default: (1) whether the default was willful; (2) whether the plaintiff would suffer prejudice if the default was set aside; and (3) whether the defendant has presented a meritorious defense. These three factors, however, are neither "talismanic" nor "exclusive." The court may consider other factors, including whether the party acted expeditiously to correct the default. Moreover, default judgments are "generally disfavored in the law" and "should not

[13] R. Doc. 59.

[14] R. Doc. 70.

[15] R. Doc. 57.

[16] R. Docs. 58, 59.

[17] R. Docs. 70, 75.

> be granted on the claim, without more, that the defendant ha[s] failed to meet a procedural time requirement."[18]

In support of their request to set aside the clerk's entry of default, Landry and LeBoeuf, who are represented by the Louisiana Attorney General's Office (the "AG's office"), state that the AG's office only recently received the assignment when the Motion to Set Aside Default was filed, and that the time for them to file responsive pleadings had only recently passed such that there was no prejudice to Plaintiff.[19] Plaintiff asserts that Landry and LeBoeuf have not presented any meritorious defenses, have not demonstrated excusable neglect, and that the setting aside of the default will prejudice him because continued delay prolongs the deprivation of the rights he seeks to adjudicate.[20]

It does not appear that the default here was willful.[21] This is not the case of uncooperative parties seeking to avoid the lawsuit. Instead, this is a case where state bureaucratic functions caused a delay in Landry and LeBoeuf's response. As to Plaintiff's claim that the delay in adjudicating this case is prejudicial, "'mere delay does not alone constitute prejudice.' Instead, 'the plaintiff must show that the delays will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion.'"[22] Plaintiff does not assert any of these. Finally, as to the last factor, which is meritorious defenses, shortly after filing the Motion to Set Aside Default,

---

[18] *Courtney v. Piggly Wiggly*, No. 16-872, 2018 WL 9362571, at *1 (M.D. La. Mar. 6, 2018) (deGravelles, J.) (citations omitted).

[19] R. Doc. 59, pp. 2-3.

[20] R. Doc. 75.

[21] "'[A] 'willful' inquiry is whether neglect [was] excusable.' 'Excusable neglect is an 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant.' 'The term 'encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness.'" *Courtney*, 2018 WL 9362571, at *2 (citations omitted). Though the delay in assignment was caused by carelessness, the Court finds the delay, in this instance, excusable.

[22] *Courtney*, 2018 WL 9362571, at *3 (citations omitted).

all defendants filed motions to dismiss, largely based on different immunity claims.[23] Specifically, Landry asserts that he is entitled to prosecutorial immunity and LeBoeuf asserts that he is entitled to qualified immunity.[24] While the Court does not address the merits of the motions to dismiss at this time, these defenses are "meritorious" in that there is "some possibility that the outcome of the suit after a full trial [or adjudication of the motions to dismiss] will be contrary to the result achieved by the default."[25] Additionally, Landry and LeBoeuf's Motion to Set Aside Default was filed just three days after the clerk entered default, and less than three weeks after their responsive pleadings would have been due on February 20, 2026, which is within the time period for a general extension of right under Local Civil Rule 7(a).[26] Their prompt action to correct the default also favors setting the Clerk's Entry of Default aside.[27]

Landry and LeBoeuf also seek an extension of time to file responsive pleadings in the Motion to Set Aside Default. Plaintiff only specifically opposed the request to set aside the Clerk's Entry of Default, not the extension of time. As noted above, Landry and LeBoeuf have already filed a Motion to Dismiss[28] and the Court is setting aside the default judgment. Accordingly, the

---

[23] *See* R. Docs. 79, 80.

[24] *See* R. Doc. 80, pp. 8-9

[25] *Courtney*, 2018 WL 9362571, at *3, citing *In re OCA*, 551 F.3d 359, 373 (5th Cir. 2008) (cleaned up).

[26] Local Civil Rule 7(a) states: "Upon certification by a moving party that there has been no previous extension of time to plead and that the opposing party has not filed in the record an objection to an extension of time, then on an ex parte motion and order, the Court will allow one extension for a period of twenty-one days from the time the pleading would otherwise be due. Further extensions will not be granted by stipulation, but only by motion to the Court and for good cause shown. This rule shall apply to pleadings listed in Fed. R. Civ. P. 7(a)." If Landry and LeBoeuf had timely requested an extension of time under Local Rule 7(a), their responsive pleadings would have been due March 13, 2026. The motion to set aside was filed March 9, 2026, and requests an extension of time to file responsive pleadings.

[27] *Courtney,* 2018 WL 9362571, at *3, citing *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003).

[28] R. Doc. 80. Landry and LeBoeuf's Motion to Dismiss was filed the same day as the other defendants so there is no prejudice to Plaintiff in considering their Motion to Dismiss.

request for extension of time will also be granted and the Motion to Dismiss will be considered timely filed as Landry and LeBoeuf's responsive pleading.

As the factors to consider in setting aside an entry of default under Fed. R. Civ. P. 55(c) weigh in favor of setting aside the Clerk's Entry of Default in this case, the Motion to Set Aside Default will be granted for good cause shown.[29] The Clerk's Entry of Default[30] will be vacated and Landry and LeBoeuf's Motion to Dismiss[31] will be considered timely filed. Accordingly, Plaintiff's Motion for Default Judgment as to Defendants Landry and LeBoeuf will be denied.[32]

**B. Plaintiff's Motion for Preliminary Injunction Will Be Denied**

"A preliminary injunction is an extraordinary and drastic remedy; it should never be awarded as of right."[33] "The decision to grant or deny a preliminary injunction lies within the discretion of the district court…."[34] To succeed on a preliminary injunction, Plaintiff must establish four elements: (1) that there is a substantial likelihood he will prevail on the merits; (2) that a substantial threat exists that irreparable harm will result if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to the defendants; and (4) that the granting of the preliminary injunction will not disserve the public interest.[35] At all times, the burden of persuasion remains with the plaintiff as to each of the four elements. If a plaintiff fails to meet his

---

[29] R Doc. 59.

[30] R. Doc. 57.

[31] R. Doc. 80.

[32] R. Doc. 70.

[33] *Hampton v. First Guar. Mortg. Corp.*, No. 16-632, 2016 WL 5796886, at *2 (M.D. La. Sept. 30, 2016), quoting *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008).

[34] *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023), cert. denied sub nom., *Anibowei v. Mayorkas*, 144 S. Ct. 551, 217 L. Ed. 2d 293 (2024).

[35] *See City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018).

burden regarding any of the necessary elements, the Court need not address the other elements necessary for granting a preliminary injunction.[36]

Defendants in this case are LDWF, which Plaintiff alleges "is a state agency that enforces state fishing laws and issued the unlawful citation at issue;" Landry and Cole Garrett, lawyers for LDWF, whom Plaintiff alleges "appeared at the citation hearing and contributed to the unlawful prosecution" and "appeared in support of the unlawful enforcement against Plaintiff," respectively; Administrative Law Judge William Cooper, who Plaintiff claims "presided over the citation hearing, acknowledged lack of jurisdiction over treaty rights, but nevertheless imposed unlawful penalties;" and LeBoeuf, who Plaintiff alleges was the LDWF Officer who "issued the citation in question and acted under color of state law in depriving Plaintiff of federally secured rights."[37] Plaintiff says that "Defendants' enforcement of a fishing license statute against Plaintiff violated federal treaty obligations and the Supremacy Clause."[38] Plaintiff's Motion for Preliminary Injunction requests that the Court "bar all further enforcement activity related to the citation."[39]

To meet his burden of substantial likelihood of success on the merits, Plaintiff cites the Supremacy Clause of the Constitution and argues that "[t]he fine and citation at issue violate this core principle," and that treaty rights "cannot be infringed by state statute."[40] Plaintiff's claims rest heavily on the premise that Defendants' enforcement of a fishing license statute against him

---

[36] *See Roho, Inc. v. Marquis*, 902 F.2d 356, 361 (5th Cir. 1990) (declining to address the remaining elements necessary to obtain a preliminary injunction after finding that the plaintiff failed to show a substantial likelihood of success on the merits).

[37] R. Doc. 1, pp. 2-3.

[38] R. Doc. 1, p. 3.

[39] R. Doc. 2-1, p. 2.

[40] R. Doc. 2-1, p. 1.

violates the Treaty of January 3, 1786.[41] Plaintiff attached this treaty to his original Complaint;[42] however, assuming this treaty applies to him, Plaintiff does not point to any specific language in the treaty that applies to the issues in this case.

Article III of the Treaty of January 3, 1786 allocates certain land to the "Choctaw nation to live and hunt on," as follows:

ARTICLE III.

> The boundary of the lands hereby allotted to the Choctaw nation to live and hunt on, within the limits of the United States of America, is and shall be the following, viz. Beginning at a point on the thirty-first degree of north latitude, where the Eastern boundary of the Natches district shall touch the same; thence east along the said thirty-first degree of north latitude, being the southern boundary of the United States of America, until it shall strike the eastern boundary of the lands on which the Indians of the said nation did live and hunt on the twenty-ninth of November, one thousand seven hundred and eight-two, while they were under the protection of the King of Great-Britain; thence northerly along the said eastern boundary, until it shall meet the northern boundary of the said lands; thence westerly along the said northern boundary, until it shall meet the western boundary thereof; thence southerly along the same to the beginning; saving and reserving for the establishment of trading posts, three tracts or parcels of land of six miles square each, at such places as the United [States] in Congress assembled shall think proper; which posts, and the lands annexed to them, shall be to the use and under the government of the United States of America.[43]

However, it is not clear that this language specifically applies to that Louisiana Band of Choctaw Indians,[44] nor whether it applies to fishing rights, as only living and hunting are specifically

---

[41] R. Doc. 1, p. 2.

[42] R. Doc. 1-14.

[43] R. Doc. 1-14, p. 2.

[44] Plaintiff attests that he is a Native American of the Louisiana Band of Choctaw Indians. R. Doc. 1-4, p. 1, ¶ 1. However, it is not clear that this treaty applies to that tribe. The Louisiana Band of Choctaw Indians is not federally recognized. *See* Indian Entities Recognized by and Eligible to Receive Services from the United States Bureau of Indian Affairs, 89 Fed. Reg. 944-02 (Jan. 8, 2024). The Jena Band of Choctaw Indians, the Mississippi Band of Choctaw Indians, and the Choctaw Nation of Oklahoma are the only Choctaw Indian tribes on the list of federally recognized tribes.

referenced.[45] Further, assuming this language applies to Plaintiff and to fishing rights, it is not clear that the BREC park where Plaintiff was cited for fishing without a license is within the geographic scope of the land allocated to the Choctaw nation in the treaty. Plaintiff claims that the Treaty of January 3, 1786 affords him fishing rights which preclude the enforcement of Louisiana law against him. This treaty is at the core of Plaintiff's request for injunctive relief, but Plaintiff has not established that the treaty grants him the rights he claims. Therefore, he cannot carry his burden to establish a likelihood of success on the merits to support injunctive relief.[46] As Plaintiff has not met this burden, the Court need not consider the other elements for injunctive relief.[47] Accordingly,

**IT IS ORDERED** that Motion to Set Aside the March 6, 2026 Entry of Default Pursuant to FRCP 55(C) and for Extension of Time to File Responsive Pleadings,[48] filed by Defendants Alvin Landry and Joshua LeBoeuf, is **GRANTED** for good cause.

**IT IS FURTHER ORDERED** that the Clerk's Entry of Default[49] is **VACATED**, and Landry and LeBoeuf's Motion to Dismiss[50] is considered timely filed.

---

[45] In *People v. LeBlanc*, 248 N.W.2d 199 (Mi. 12/27/76), a case from the Supreme Court of Michigan upon which Plaintiff relies heavily, that court concluded that a treaty retained certain rights for the Chippewas and that the treaty language which stated that "[t]he Indians stipulate for the right of hunting on the lands ceded," included fishing rights. However, the Michigan Supreme Court's analysis was based on evidence as to the Chippewa's way of life at the time the treaty was negotiated. Because fishing was central to Chippewa culture from a commercial and subsistence perspective at the time the treaty was entered, the court concluded "there can be little doubt" that the treaty language "was understood by the Chippewas to include the right to fish." 248 N.W.2d at 204. *LeBlanc* is not controlling on this Court. Even if it were, Plaintiff has not presented such evidence to meet his burden of substantial likelihood of success on the merits in this case.

[46] Plaintiff's allegations in support of his Complaint, as amended, and request for preliminary injunction fail to establish a likelihood of success on the merits. The Court is not addressing the arguments raised by the defendants in their motions to dismiss, or in Plaintiff's opposition memoranda at this time. R. Docs. 79-82, 84-85, 89. This Ruling and Order is not a determination that Plaintiff's claims will ultimately fail, just that Plaintiff has not carried his burden of persuasion to be entitled to injunctive relief.

[47] *See Roho, Inc.*, 902 F.2d at 361.

[48] R. Doc. 59.

[49] R. Doc. 57.

[50] R. Doc. 80.

**IT IS FURTHER ORDERED** that the Motion for Default Judgment,[51] filed by Plaintiff Miko Blue Mahi, which seeks a default judgment against Alvin Landry and Joshua LeBoeuf, is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction[52] is **DENIED**, as Plaintiff has failed to make a showing of entitlement to injunctive relief.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send this Order to Plaintiff by regular and by certified mail to the address listed on PACER.

Signed in Baton Rouge, Louisiana on September 11, 2026.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

[51] R. Doc. 70.

[52] R. Doc. 2.